TERREE A. BOWERS (SBN 089334)
HOWREY LLP
550 South Hope Street, Suite 1100
Los Angeles, California 90071
Telephone: (213) 892-1800
Facsimile: (213) 892-2300
Email: bowerst@howrey.com

Attorneys for Defendant
TERRY CHRISTENSEN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR No. 05-1046(C)-DSF |
| Plaintiff, | **NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING REGARDING LEAK OF AUDIO RECORDINGS TO THE NEW YORK TIMES; DECLARATION OF TERREE A. BOWERS; EXHIBITS** |
| vs. | |
| ANTHONY PELLICANO, MARK ARNESON, RAYFORD EARL TURNER, KEVIN KACHIKIAN, ABNER NICHERIE, DANIEL NICHERIE, and TERRY CHRISTENSEN, | **The Honorable Dale S. Fischer** Hearing Date: TBD Time:         TBD |
| Defendants. | |

Defendant Terry N. Christensen, by and through his counsel of record, Terree A. Bowers, moves the Court for an evidentiary hearing regarding the leak of audio recordings to the New York Times. On January 11, 2007, the New York Times published excerpts of audio recordings between Anthony Pellicano and Mr. Christensen that are subject to the Court's Protection Order of April 3, 2006. The New York Times placed these confidential audio recordings on its website so that anyone can access the

HOWREY LLP

NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING REGARDING LEAK OF AUDIO RECORDINGS; DECLARATION OF TERREE A. BOWERS; EXHIBITS
US_20197110v1

1   recordings.  The leak of the recordings is a blatant violation of the Court's Protection
2   Order and irreparably destroys Mr. Christensen's right to a fair trial.  Mr. Christenson's
3   motion is based on the attached Memorandum of Points and Authorities, Declaration of
4   Terree A. Bowers, the files and records of this case, and such further evidence and
5   argument as may be presented to the Court at a hearing on this motion.

6

7   DATED:  January 18, 2007                    Respectfully submitted,

8                                               HOWREY LLP

9

10                                              By:   /s/  Terree A. Bowers
11                                                    TERREE A. BOWERS

12                                              Attorneys for Defendant
                                                TERRY CHRISTENSEN
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY LLP

-2-
NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING REGARDING LEAK OF AUDIO
RECORDINGS; DECLARATION OF TERREE A. BOWERS; EXHIBITS
US_20197110v1

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  INTRODUCTION**

The investigation and prosecution of Mr. Christensen has been fraught with governmental deceit, obfuscation, sensationalism, and injustice from the minute the government began its investigation.  The prosecutors have fueled a media frenzy with overreaching press statements, and repetitive and false claims of superseding indictments, indicating that high profile individuals from the entertainment and legal communities will eventually be indicted.  Nothing could be further from the truth as the prosecutors prepare to embark upon their second trial of a previously acquitted "soccer mom."  Even the use of racketeering charges has been used to distort and exaggerate a case that, for Mr. Christensen, would have been filed, if at all, as a misdemeanor by the local district attorney.  Now the hype, overcharging, and sensationalism generated by the government's handling of this case has resulted in the worst offenses possible -- the total deprivation of a citizen's right to a fair trial and the total obliteration of his presumption of innocence.  According to information available so far, the leak of Pellicano's illegal recordings of Mr. Christensen appears to be the work of a government source, but even if that cannot be proven at this time, it is clear that the government's mishandling of this case has resulted in this reprehensible leak of confidential tapes to the world at large.

The leak of the recordings is reprehensible in that the recordings are presented out of context, in a selective manner, with the full intent to pillory Mr. Christensen in public.  Because he, himself, is bound by the Protective Order, he must stand mute as his reputation and his presumption of innocence are destroyed.  Has the government done anything to prevent or ameliorate this horrendous breach of the Court's authority and Mr. Christensen's rights?  No.  The government has not even taken the time to notify the Court of this flagrant and despicable breach of the Protective Order.  Such inaction is a glaring omission in light of the fact that the prosecutors did not hesitate to

HOWREY LLP

NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING REGARDING LEAK OF AUDIO RECORDINGS; DECLARATION OF TERREE A. BOWERS; EXHIBITS
US_20197110v1

1  unilaterally cut off discovery to Mr. Christensen because of their disingenuous claim

2  that the first leak to the New York Times was from the defense camp.

3      The revelation of the truth in this case is just beginning.  After a year of the

4  government failing to respond to discovery letters; after a year of unresponsive,

5  confusing and piecemeal productions of evidence; after a year of the government's

6  refusal to provide relevant, exculpatory evidence; after a year of "inadvertent

7  omissions" of critical evidence; after a year of failing to inform the Court of the many

8  layers of governmental misconduct that permeate this case; the defense will now begin

9  filing a series of motions that will reveal and underscore the government's egregious

10  mishandling of this case.  The time has come to flush out the improprieties, the cover

11  ups, and the failure to inform the Court of the true state of the government's conduct in

12  this case.

13      The leak of the audio recordings, the only evidence put forth by the prosecutors in

14  this case against Mr. Christensen, is indicative of a win-at-all costs approach by the

15  government and an infatuation with creating a high profile, media-hyped case where the

16  true facts are far less sensational and, in Mr. Christensen's case, not even incriminating.

17  At some point, the government must be held accountable.  Such accountability should

18  begin with the Court's immediate intervention to ensure that the source of the leaks is

19  identified and sanctioned.[1]

20  **II.   THE LEAKS**

21      On April 3, 2006, the Court issued a Protective Order to keep discovery materials,

22  such as the audio recordings, from being disseminated to the public.

23      On April 26, 2006, the New York Times ran an article that included large

24  portions of Federal Bureau of Investigation (FBI) interview reports, reports that reflect

25  an interviewing agent's personal views inasmuch as they are not verbatim quotes of

26

27  _____

[1]   The prosecutors at least have agreed not to oppose the request to have the Court conduct an evidentiary hearing.

28

1   what a witness actually said.  The article contained piecemeal, out-of-context portions

2   of the reports and unfairly characterized the evidence against Mr. Christensen.

3   Mr. Christensen could not rebut the false information because he, himself, was bound

4   by the Protective Order.  The New York Times' unfair characterizations, which were

5   picked up by other media outlets, severely undermined Mr. Christensen's rights and his

6   ability to have a fair trial.

7        As damaging as the April leaks were, the current leak to the New York Times

8   surpasses the former in its vileness and the irreparable harm caused to Mr. Christensen.

9   On January 11, 2007, the New York Times quoted portions of the audio recordings

10  Anthony Pellicano illegally made of Terry Christensen.  (Ex. A)  The New York Times

11  actually placed the recordings on its website so that anyone with access to the internet

12  can listen to the recordings.  (Ex. B)  The article and recordings have been spread

13  throughout the country through every type of media outlet.  (Ex. C)  Again,

14  Mr. Christensen cannot rebut the unfair characterizations by the New York Times

15  because he is bound by the Protective Order.  The latest leak totally destroys Mr.

16  Christensen's right to a fair trial and is worthy of the most severe sanction possible --

17  dismissal of the indictment.

18  **III.   THE GOVERNMENT'S INVESTIGATION**

19       Shortly after the April 2006 leaks, the San Diego United States Attorney's Office

20  (SDUSAO) began an investigation ostensibly to determine the source(s) of the leaks.

21  All members of Mr. Christensen's defense team, as well as Mr. Christensen himself,

22  volunteered to interviews by the FBI and SDUSAO.  In addition to the interviews, the

23  Christensen defense team provided the SDUSAO with crucial witnesses and

24  information in order to advance the investigation.  The investigation, however, is

25  languishing and shows no signs of a serious effort to identify the source(s) of the leaks.

26       Obviously, one of the most effective tools for ferreting out the source(s) is to

27  subpoena the two New York Times reporters responsible for printing the leaked

28

HOWREY LLP

NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING REGARDING LEAK OF AUDIO
RECORDINGS; DECLARATION OF TERREE A. BOWERS; EXHIBITS
US_20197110v1

1 material.  The SDUSAO has shown a great reluctance to pursue this most effective

2 investigative tool.  It is unclear as to what, if any, affirmative steps the SDUSAO is now

3 taking.  Apparently, all of the initial contacts with the parties have been completed and

4 the foundation has been established for the subpoenas of the two reporters.  The

5 inexplicable delay in pursuing the subpoenas and current inaction suggests a reluctance

6 to investigate the matter fully.

7    As evidence mounts that the source is indeed from the government side of the

8 case (IV), the reluctance of the SDUSAO to be aggressive in its pursuit of the source(s)

9 gives the disturbing implication that the government is refusing to pursue its own.

10 Consequently, it is imperative that the Court exert its powers to protect its Order and to

11 protect Mr. Christensen's rights.

12 **IV.   THE GOVERNMENT APPEARS TO BE THE SOURCE OF THE LEAKS**

13    In April 2006, after the first set of leaks, the government unilaterally stopped

14 production of Jencks material in violation of its agreement with the defendants.  The

15 prosecutors argued to this Court that the leaks had obviously come from the defense and

16 therefore Jencks production should cease.  Ironically, it now appears that the leaks came

17 from the government.

18    The latest leak of the Pellicano-Christensen recordings can be attributed to a

19 government source or sources for the following reasons:

20    1.   At least one witness recalls FBI Agent Stanley Ornellas saying that he lost

21       his notes at some point during the case.  The government has never

22       disclosed to the Court the possibility that Agent Ornellas lost confidential

23       materials and that the loss may be the source of the leaks.  Equally plausible

24       is that Agent Ornellas is setting up some type of alibi in the event that the

25       illegally disclosed materials will be traced to him.  Incredibly, on

26       January 16, 2007, the government produced to the defense the FBI

27       interview report pertaining to this witness, but redacted all of the

28

HOWREY LLP

-4-
NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING REGARDING LEAK OF AUDIO
RECORDINGS; DECLARATION OF TERREE A. BOWERS; EXHIBITS
US_20197110v1

1    information that apparently pertains to Ornellas' loss of his confidential

2    notes.  The Court should demand from the government an unredacted

3    version of the report so that it can verify what Agent Ornellas said.

4    Mr. Christensen also requests an unredacted copy of the report.  (Bowers

5    Declaration ¶ 8)

6    2.    The New York Times reporters have revealed to at least one witness that

7          they obtained the protected material from the government *before* it was

8          released to the defendants as discovery.

9    3.    The New York Times included the following paragraph in its article:

10             The recordings are among hundreds that

11             prosecutors have turned over to defense lawyers,

12             along with tens of thousands of documents.  That

13             evidence was subject to a court protective order,

14             and prosecutors are investigating the New York

15             Times's access of it.

16    The paragraph is a transparent attempt to deflect attention away from a

17    government source by suggesting that the recordings came from the

18    production of materials to the defendants.  It also casts the prosecutors as

19    not involved in the leak, but instead responsible for investigating the leaks.

20    If someone connected with a defendant provided the recordings to the

21    New York Times, it is doubtful that such a paragraph would have been

22    included.

23    4.    Within the last two months, Mr. Christensen's defense team has revealed to

24          the government and to the Court that the "dirty team" did not follow the

25          mandate of the United States Supreme Court in seeking a crime fraud

26          exception for the release of the Pellicano-Christensen recordings.  The

27          government has essentially conceded its failure to follow the caselaw, but

28

HOWREY LLP

-5-
NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING REGARDING LEAK OF AUDIO
RECORDINGS; DECLARATION OF TERREE A. BOWERS; EXHIBITS
US_20197110v1

will undoubtedly contest the appropriate remedy.  In any event, it has recently become clear to all members of the prosecution team that there is a very real possibility of the recordings being suppressed.  Faced with such a result, it is most likely that someone from the prosecution took this illegal and drastic step of ensuring that members of the public got to see excerpts and listen to the recordings.  There is no countervailing motive for any of the defendants to have leaked the information.

5.    In order to place the actual recordings on the New York Times website, the reporters and their superiors needed to have a high degree of confidence that the recordings they received were accurate recordings that had not been manipulated or changed in any way.  A government source could be the only basis for such a necessarily high degree of certainty.

All of the circumstantial evidence points to a member(s) of the prosecution team as the source of the leaks.

## V.    THE COURT SHOULD CONDUCT AN EVIDENTIARY HEARING REGARDING THE LEAKS

The San Diego investigation is going nowhere.  Mr. Christensen's rights are being trampled as the New York Times, most likely through a government source, tries him in the unreliable and irresponsible court of public opinion.  It is essential that the Court intervene to protect its own authority and to sanction the conduct that irreparably deprived Mr. Christensen of the fair trial he deserves.

In the recent "Balco" case involving an investigation into the distribution of steroids, the United States District Court for the Northern District of California faced similar debilitating leaks to the San Francisco Chronicle.  After the initial leaks, Judge Susan Illston ordered the parties to submit declarations regarding their handling of the grand jury transcripts that were leaked.  *In Re Grand Jury Subpoenas To Mark*

1  *Fainaru-Wada and Lance Williams*, 438 F. Supp. 2d 1111 **(**2006).  All parties submitted

2  the requested declarations.

3      Mr. Christensen urges this Court to follow the same procedure.  The Court should

4  request all parties and the members of their respective teams to submit declarations

5  concerning their handling of the protected materials and whether they are responsible in

6  any way for the leak to the New York Times.  The Court, if necessary, can then question

7  individuals concerning their declarations.  Such a procedure would in no way impede

8  the less-than-satisfactory investigation by the SDUSAO.  To the contrary, the Court's

9  intervention would expedite the investigation and perhaps lead to the identification of

10  the source(s) of the leaks.

11  **VI.  THE COURT SHOULD ORDER THE SDUSAO TO SUBPOENA THE**

12  **TWO NEW YORK TIMES REPORTERS TO REVEAL THEIR**

13  **SOURCE(S)**

14      The law involving a reporter's purported right to assert a First Amendment right

15  to refuse to testify before a federal grand jury and to reveal a confidential source makes

16  it clear that reporters share the same responsibilities as all citizens.  In *Cohen v. Cowles*

17  *Media Co*., 501 U.S. 663 (1991), the United States Supreme Court stated:

18          Neither does the First Amendment relieve a newspaper

19          reporter of the obligation shared by all citizens to respond

20          to a grand jury subpoena and answer questions relevant to

21          a criminal investigation, even though the reporter might

22          be required to reveal a confidential source.

23      At 669 (citing *Branzburg v. Hayes*, 408 U.S. 665 (1972).

24  Similarly, in the *Fainaru-Wada/Williams* case, 438 F. Supp. at 1122, the district court

25  denied the reporters' motion to quash the subpoena and ordered the reporters to appear

26  before the grand jury.

27

28

HOWREY LLP

-7-

NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING REGARDING LEAK OF AUDIO
RECORDINGS; DECLARATION OF TERREE A. BOWERS; EXHIBITS

US_20197110v1

1   Approximately nine (9) months have passed since the SDUSAO initiated its
2   investigation.  There is no justification for the SDUSAO to delay the subpoenas of the
3   two reporters.  Mr. Christensen respectfully requests the Court to order the SDUSAO to
4   proceed with the issuance of the subpoenas so that the reporters can be compelled to
5   reveal their source(s).

6   **VII.   CONCLUSION**

7   The recent leak of audio recordings to the New York Times is one of the most
8   reprehensible acts possible.  Not only is the leak a brazen challenge to the Court's
9   authority, but it is an attempt to deprive Mr. Christensen of a fair trial and an effort to
10  permanently damage the reputations of Mr. Christensen and Kirk Kerkorian.  Such
11  egregious conduct cannot go unaddressed.

12  Mr. Christensen urges the Court to assert its power and order all parties to submit
13  declarations concerning their handling of the protected materials and their interaction
14  with the New York Times.  The Court should then follow the submission of the
15  declarations with an evidentiary hearing to probe the veracity of the declarations.
16  Finally, the Court should order the SDUSAO to immediately issue subpoenas to the
17  New York Times reporters so that they can be compelled to reveal their source(s).

18
19  DATED:  January 18, 2007                    Respectfully submitted,
20                                              HOWREY LLP
21
22                                              By:    /s/ Terree A. Bowers
23                                                     TERREE A. BOWERS
24                                              Attorneys for Defendant
25                                              TERRY CHRISTENSEN
26
27
28

HOWREY LLP

-8-
NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING REGARDING LEAK OF AUDIO
RECORDINGS; DECLARATION OF TERREE A. BOWERS; EXHIBITS
US_20197110v1

# DECLARATION OF TERREE A. BOWERS

I, TERREE A. BOWERS, declare:

1.     I am a member in good standing of the Bar of the State of California and of this Court, and a partner in the firm of Howrey, LLP.  I represent Terry N. Christensen in *United States v. Pellicano, et al.*, No. 05-CR-1046(C)-DSF.  If called as a witness in connection with this matter, I could and would be able to testify to the following information of my own personal knowledge or, when noted, upon information and belief.

2.     On January 9, 2007, David Halbfinger and Allison Hope Weiner, two reporters from the New York Times, called me and told me that they had obtained the audio recordings that Anthony Pellicano made of Terry Christensen.  I reminded them that the recordings were subject to a federal protective order and urged them not to publish the recordings.

3.     On January 10, 2007, I told Mr. Halbfinger and Ms. Weiner to inform their editors and the General Counsel for their newspaper that we would be sending letters asking them to refrain from publishing the recordings and violating the protective order.  A copy of the letter is attached as Exhibit D.

4.     On January 11, 2007, the New York Times ignored our requests and published an article quoting segments of the confidential recordings.  A copy of the article is attached as Exhibit A.  The New York Times also printed excerpts from the recordings and placed clips of the recordings on its website.  (See Exhibit B).

HOWREY LLP

NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING REGARDING LEAK OF AUDIO RECORDINGS; DECLARATION OF TERREE A. BOWERS; EXHIBITS
US_20197110v1

5.     Numerous media outlets throughout the country picked up the story and it appeared throughout the nation.  Attached as Exhibit C is a Media Analysis prepared by Agnes Huff Communication that shows how extensively the recordings were covered.

6.     I have spoken with Assistant United States Attorneys Daniel Saunders and Kevin Lally and they represented to me that the government would not oppose our request to the Court for an evidentiary hearing on the leak, provided we notify the Court that the San Diego United States Attorney's Office is currently conducting an investigation into the leak.

7.     On January 16, 2007, I received a copy of a severely redacted FBI 302 interview report concerning a witness who was told by FBI Special Agent Stanley Ornellas that Ornellas had lost his notes of matters involving the Pellicano investigation. Upon information and belief, it appears that the redacted portions of the FBI 302 contain this witness' statements about Ornellas' loss of his notes.  The Court should demand a copy of the FBI 302 so that the Court can determine if the redacted portions have any relevance to the leaks to the New York Times.  The Court should also make inquiry of the government as to whether any materials have been misplaced or lost.

8.     I have previously spoken with Assistant United States Attorney Robert Chiaffa who is leading the leak investigation.  I have urged him to expedite the investigation because it could be dispositive of the underlying criminal case, particularly if the government is the source of the leaks.  I informed Assistant United States Attorney Chiaffa that I would like to use the statements about Special Agent Ornellas' loss of his notes in the criminal case and he did not object.  Consequently, the redaction to the FBI 302 produced on January 16, 2007 must have been made by the Los Angeles

1 | prosecutors.  We request the Court to order the prosecutors to provide Mr. Christensen
2 | with an unredacted version of the FBI 302.

3 |      9.    It is also my understanding that a second witness has informed the
4 | San Diego United States Attorney's office that the New York Times reporters
5 | previously said that they had obtained the leaked materials from the government before
6 | the materials had been produced to the defendants.

7 |

8 |      I declare under penalty of perjury that the foregoing is true and correct.
9 |      Executed this 18th day of January, 2007 at Los Angeles, California.

10 |

11 |

12 |                   _  /s/  Terree A. Bowers
                   TERREE A. BOWERS

HOWREY LLP

-3-

NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING REGARDING LEAK OF AUDIO
RECORDINGS; DECLARATION OF TERREE A. BOWERS; EXHIBITS

US_20197110v1

1

**Attachment "A"**

2

**PROOF OF SERVICE**

3

4   STATE OF CALIFORNIA          )
                                 )   ss.:
5   COUNTY OF LOS ANGELES        )

6

7          I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 550 South Hope Street, Suite 1100, Los Angeles, California  90071.

8

9          On January 18, 2007, I served on the interested parties in said action the within:

10  **MOTION FOR EVIDENTIARY HEARING REGARDING LEAK OF AUDIO RECORDINGS TO THE NEW YORK TIMES; DECLARATION OF TERREE A. BOWERS; EXHIBITS**

11

12         by placing a true copy thereof in a sealed envelope(s) addressed as stated on the attached mailing list and causing such envelope(s) to be deposited in the U.S. Mail at Los Angeles, California.

13

14  ☒   (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

15

16  ☐   (EXPRESS MAIL) I am readily familiar with this firm's practice for collection and processing of Express Mail to be sent by the United States Postal Service.  Under that practice, the Express Mail would be deposited on that same day in the ordinary course of business in a post office, mailbox, sub-post office, substation, mail chute, or other like facility regularly maintained by the United States Postal Service or receipt of Express Mail.

17

18

19  ☐   (PERSONAL SERVICE) I caused each such envelope to be delivered by hand to the offices of each interested party.

20

21  ☐   (FACSIMILE) I caused the foregoing document to be served by facsimile transmission to each interested party at the facsimile machine telephone number shown as stated on the attached mailing list.

22

23         I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

24

25         Executed on January 18, 2007, at Los Angeles, California.

26  _____          _____
            Yvonne A. Kubicek                          /s/ Yvonne A. Kubicek
           (Type or print name)                             (Signature)

27

28

HOWREY LLP

-4-

NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING REGARDING LEAK OF AUDIO RECORDINGS; DECLARATION OF TERREE A. BOWERS; EXHIBITS

US_20197110v1

1

<u>SERVICE LIST</u>

2  Steven F. Gruel, Esq.                    Counsel for ANTHONY PELLICANO
   Law Office of Steven F. Gruel
3  655 Montgomery Street, Suite 1700
   San Francisco, CA  94111
4  Fax:  (415) 576-1442

5  Stephen D. Miller, Esq.                  Counsel for MARK ARNESON
   Law Offices of Stephen D. Miller P.C.
6  360 North Bedford Drive, Suite 204
   Beverly Hills, CA  90210-5157
7  Fax:  (310) 247-8588

8  Chad Hummel, Esq.                        Counsel for MARK ARNESON
   Manatt, Phelps & Phillips
9  11355 West Olympic Boulevard
   Los Angeles, CA  90064
10 Fax:  (310) 914-5736

11 Mona C. Soo Hoo, Esq.                    Counsel for RAYFORD EARL TURNER
   Law Offices of Mona C. Soo Hoo
12 One Wilshire Building
   624 South Grand Avenue, 22nd Floor
13 Los Angeles, CA  90017-3323
   Fax:  (213) 623-3836
14
   David Elder, Esq.                        Counsel for KEVIN KACHIKIAN
15 Law Offices of David Elder
   428 Main Street, Suite 201
16 Huntington Beach, CA  92648
   Fax:  (714) 960-9887
17
   Lawrence J. Semenza, Esq.                Counsel for ABNER NICHERIE
18 1681 East Flamingo Road, Suite 3
   Las Vegas, NV  89119
19 Fax:  (702) 263-3539

20 DANIEL E. NICHERIE
   Register No. 60587-079
21 Metropolitan Detention Center – Los Angeles
   Post Office Box 1500
22 535 North Alameda Street
   Los Angeles, CA  90012
23 Fax:  (213) 253-9510

24 Daniel Saunders                          Counsel for UNITED STATES OF AMERICA
   Kevin M. Lally
25 Assistant United States Attorneys
   United States Attorney's Office
26 1500 United States Courthouse
   312 North Spring Street
27 Los Angeles, CA  90012
   Fax:  (213) 894-3713
28

HOWREY LLP

-5-
NOTICE OF MOTION AND MOTION FOR EVIDENTIARY HEARING REGARDING LEAK OF AUDIO
RECORDINGS; DECLARATION OF TERREE A. BOWERS; EXHIBITS
US_20197110v1