1 | TERREE A. BOWERS (SBN 089334)
HOWREY LLP
2 | 550 South Hope Street, Suite 1100
Los Angeles, California 90071
3 | Telephone: (213) 892-1800
Facsimile: (213) 892-2300
4 | Email: bowerst@howrey.com

5 | Attorneys for Defendant
TERRY CHRISTENSEN

6

7

8 UNITED STATES DISTRICT COURT

9 CENTRAL DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA,           ) Case No. CR 05-1046(C)-DSF
                                       )
12           Plaintiff,                ) **DEFENDANT TERRY**
                                       ) **CHRISTENSEN'S NOTICE OF**
13      vs.                            ) **MOTION AND MOTION TO**
                                       ) **COMPEL DISCOVERY**
14 ANTHONY PELLICANO,                  )
MARK ARNESON,                          ) **The Honorable Dale S. Fischer**
15 RAYFORD EARL TURNER,                )
KEVIN KACHIKIAN,                       ) **Courtroom: 840**
16 ABNER NICHERIE,                     ) **Hearing date: March 5, 2007**
DANIEL NICHERIE, and                   )
17 TERRY CHRISTENSEN,                  )
                                       )
18           Defendants.              )
                                       )
19                                     )
                                       )
20 _____ )

21

22        Defendant Terry Christensen, by and through his counsel of record, Terree A.

23 Bowers, submits this Motion to Compel. Counsel has consulted with the United States

24 Attorney's Office pursuant to the pre-trial order concerning this motion.

25        This motion is based on Rule 16, Federal Rules of Criminal Procedure, as well as

26 Brady v. Maryland, 373 U.S. 83 (1963), and its progeny. Mr. Christensen respectfully

27

28

1   requests that the Court enter an Order directing the government to comply with its

2   obligation to produce the items requested by the defense and to respond to the defense's

3   appropriate requests.

4

5   DATED:  February 12, 2007                    Respectfully submitted,

6                                                HOWREY LLP

7

8                                                By:  ___/s/ Terree A. Bowers_____

9                                                     TERREE A. BOWERS
                                                      Attorneys for Defendant
10                                                    Terry Christensen

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1     **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **I.    INTRODUCTION**

3      **A.    Government's Failure to Produce Required Discovery**

4      More than a year has passed since the sensationalized unsealing of the operative,

5  superseding indictment in the instant case.  During that year, Mr. Christensen has been

6  subjected to a barrage of unfair publicity that was plainly instigated by shocking and

7  improper selective leaks of information that could only have come from the

8  government.  Mr. Christensen cannot and will not participate in the media frenzy

9  precipitated by the government's leaks.  Rather, he must focus on preparing his defense

10  in this case so that he can prove that he is absolutely innocent of the charges against

11  him.  Yet, while the government focuses on trying its case in the media, freely providing

12  information to media such as the *New York Times*, it is blatantly ignoring its most basic

13  constitutional and statutory obligations to provide discovery to the defense.

14      Indeed, after more than a year of the defense struggling to obtain basic materials

15  that it is entitled to receive to prepare its defenses, the government continues to fail to

16  meet its fundamental discovery obligations.  Recordings continue to mysteriously

17  materialize and "inadvertently omitted" FBI 302s appear without explanation.  Basic

18  disclosures such as the fact there are absolutely no recordings of the purported wiretap

19  of Lisa Bonder Kerkorian and the purported "fact" that the government has supposedly

20  destroyed the original affidavit for the search of Anthony Pellicano's ("Pellicano")

21  office are made only after months of persistence by the defense.  The government's

22  discovery to date has been woefully inadequate and shockingly below what should be

23  the standard of the Los Angeles United States Attorney's Office.  What follows are but a

24  few examples of the non-responsive and piecemeal discovery practice of the prosecutors

25  in this case:

26      1.  Unresolved Audio Files

27      On September 6, 2006, the government notified Mr. Christensen that the FBI had

28  identified 45 additional audio files, 39 of which had been decrypted.

DEFENDANT TERRY CHRISTENSEN'S NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY

1   On September 8, 2006, Mr. Christensen sought discovery of the "recently

2   identified" 45 audio files.  The government briefly responded on October 27, 2006, that

3   it would provide Mr. Christensen a full response shortly.

4   On January 12, 2007, the government supplemented its discovery production but

5   no mention was made of the 45 audio files requested on September 8, 2006.

6   On February 2, 2007, Mr. Christensen again asked for the audio files.

7   On February 7, 2007, the defense received a letter from the government

8   explaining that there were 44 files, not 45, and that 6 of the files were still encrypted and

9   6 other files, although decoded, could not be recovered.  (See attached Exhibit A).

10   Incredibly, the government also disclosed in its letter the following:

11   As a result of a very recent further quality control review of all
     file directories on the seized computers to locate any of
12   Telesleuth files that have not previously been identified, five
13   additional files were identified and have been forwarded to
     FBI computer specialists to decrypt and convert if possible.
14

15   How can the defense possibly prepare for trial when the government continues to

16   stumble through its evidence and is totally incapable of advising the defense of what it

17   actually possesses.  It is unacceptable for the government to still be discovering audio

18   files this far into the prosecution.  Regardless of the strong possibility that the

19   government is acting in bad faith and intentionally acting to stymie the defense, this

20   latest revelation shows that the government at a minimum is totally disorganized and not

21   capable of providing meaningful discovery.  The Court should seriously consider

22   dismissing this case until such time as the government can get its act together and meet

23   its most fundamental obligations.

24       2.  <u>Chain of Custody & Authentication of Audio Files</u>

25   On March 28, 2006, Mr. Christensen submitted a detailed discovery request

26   concerning chain of custody, authentication, and decoding of the encrypted recordings.

27   In April 2006, Mr. Christensen received a few FBI reports, but it was clear that

28   the bulk of the information was missing.

1    Mr. Christensen renewed his discovery request on November 9, 2006, focusing

2  solely on discovery concerning chain of custody, authenticity, and decoding of the

3  recordings.

4    On January 12, 2007, almost an entire year after the superseding indictment, the

5  government produced a few more FBI 302s pertaining to the government's handling of

6  the seized computers and audio recordings.  The production is still incomplete and Mr.

7  Christensen's request remains outstanding.

8    3.  <u>FBI 302s of Confidential Witness In Pellicano Search Affidavit</u>

9    On March 28, 2006, Mr. Christensen sought discovery pertaining to government

10  witnesses, including the Confidential Witness ("CW") described in the affidavit

11  supporting the search of Pellicano's office.

12    On November 9, 2006, Mr. Christensen clarified and specified his discovery

13  request pertaining to the CW described in the search affidavit.

14    On December 1, 2006, the government produced a number of documents, and

15  stated that it believed that its discovery regarding the CW was complete.

16    On January 12, 2007, the government produced three more FBI 302s pertaining to

17  the CW.  The government stated that the 302s had supposedly been "inadvertently

18  omitted" from December 1, 2006 production.

19    On January 17, 2007, Mr. Christensen renewed his request asking the government

20  to produce all 302s pertaining to the CW's relationship with the government before the

21  Anita Busch incident.

22    On January 19, 2007, the government by letter refused to produce the 302s.  (See

23  attached Exhibit B).  Mr. Christensen's request remains outstanding.

24    4.  <u>Original Affidavit Underlying Search Warrant</u>

25    On September 11, 2006, Mr. Christensen requested the original affidavit and all

26  drafts of the affidavit for the initial search of Pellicano's offices. Mr. Christensen noted

27  that the defense only had a copy of an "amended" affidavit.

28

HOWREY LLP

-3-

DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY

DM_US:20216810_1

1         Receiving no response from the government, Mr. Christensen renewed this

2   request on January 17, 2007.

3         Pursuant to its January 19, 2007 correspondence (Ex. B), the government

4   concedes that drafts of the affidavit and the original affidavit are supposedly "missing."

5         Mr. Christensen renewed his request on February 2, 2007, and it remains

6   outstanding.

7         5.   <u>October 2005 Pleadings</u>

8         On September 29, 2006, the government purported to produce the "filter team's"

9   November 2005 *ex parte* application seeking to override the attorney-client

10   privilege/work product doctrine through the crime-fraud exception.  Footnotes in the

11   November 2005 *ex parte* application reference a "related" *ex parte* filing, which resulted

12   in an October 24, 2005 minute order.

13         On October 25, 2006, Mr. Christensen sought a copy of the government's

14   "related" *ex parte* filing.  Having first been promised production of this filing by AUSA

15   Kevin Lally ("AUSA Lally"), the promise was rescinded by AUSA Daniel Saunders

16   ("AUSA Saunders"), who refused to disclose the pleadings.  The government reaffirmed

17   its refusal to produce the "related" filing on October 27, 2006.  On November 2, 2006,

18   Acting United States Attorney George Cardona reversed AUSA Saunders' decision and

19   promised to provide Mr. Christensen's defense team with redacted versions of the filing.

20         This request was renewed again on February 2, 2007.  To date, the government

21   has not responded, and, while the government is apparently preparing a redacted version

22   of the filing, it has not been produced.

23         6.   <u>"Dirty Team" Protocols & Prosecution Memorandum</u>

24         On March 30, 2006, April 14, 2006, and again on September 8, 2006, Mr.

25   Christensen sought all written instructions, protocols, and/or directives provided to the

26   "dirty team" or "filter team" regarding its conduct and responsibilities.

27         On November 2, 2006, Mr. Christensen renewed this request seeking production

28   of all portions of the prosecution report or memorandum provided to the "dirty team"

-4-

DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY

1   pertaining to the investigation of Mr. Christensen, the litigation between Kirk Kerkorian
2   and Lisa Bonder Kerkorian, any issues concerning Steven Bing, and the investigation of
3   Dennis Wasser as it relates to Mr. Christensen and the Kerkorian litigation.

4          To date, the government has not responded and the requests remain outstanding.

5          The foregoing is but a sampling of the inexcusable delays and failures to respond
6   that have become the government's *modus operandi*.

7          **B.     Legal Standards For The Government's Disclosure Obligations**

8          In a criminal case, the United States' discovery obligations are rooted in two
9   separate sources. The Federal Rules of Criminal Procedure, Rule 16(a)(1)(E), requires
10  the government to, upon the defendant's request, provide or allow the defendant access
11  to documents and objects in the government's possession. United States v. Hicks, 103
12  F.3d 837, 840 (9th Cir. 1996).  The due process clauses of the Fifth and Fourteenth
13  Amendments to the Constitution, as interpreted by the United States Supreme Court in
14  Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, require the prosecution to learn
15  of and disclose to the defense any exculpatory or impeachment evidence favorable to
16  the accused that is in the prosecution's possession.

17         Rule 16(a)(1) provides, among others, the following categories of discoverable
18  information:

19         (E)    Documents and objects: "books, papers, documents, data, photographs,
20  tangible objects, buildings or places" if the item (i) is material to preparing the defense;
21  (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item
22  was obtained from or belongs to the defendant. Fed. R. Crim. P. 16(a)(1)(E).

23         (F)    Reports of examinations and tests: "results or reports of any physical or
24  mental examination and of any scientific test or experiment" if the item is intended for
25  use in the government's case-in-chief or is material to the preparation of the defense.
26  Fed. R. Crim. P. 16(a)(1)(F).

27         To obtain discovery under Rule 16(a)(1)(E)(i), a defendant must make a prima
28  facie showing of materiality.  United States v. Mandel, 914 F.2d 1215, 1219 (9th Cir.

1990).  The Ninth Circuit has held that Rule 16(a)(1)(E)(i) permits discovery that is "relevant to the development of a possible defense."  Id.

The sanction to be imposed for failure to comply with Rule 16 rests in the sound discretion of the district court.  United States v. Burgess, 791 F.2d 676, 681 (9th Cir. 1986); United States v. Gee, 695 F.2d 1165, 1168 (9th Cir. 1983). A district court faced with a violation of Rule 16 may order discovery, grant a continuance, prohibit introduction of the evidence or enter such order as it deems just under the circumstances.  Fed. R. Crim. P. 16(d)(2).

The due process clauses of the Fifth and Fourteenth Amendments place a clear and affirmative duty on the prosecution in a criminal case to disclose to the defense any evidence in the government's possession that is favorable to the accused and that is material to either guilt or punishment.  Brady, 373 U.S. at 87.  Suppression of such evidence by the government creates a constitutional violation, regardless of the good faith or bad faith or the prosecutor.  Id.; accord, Strickler v. Greene, 527 U.S. 263, 288 (1999) ("An inadvertent nondisclosure has the same impact on the fairness of the proceedings as deliberate concealment.").  The constitutional obligations under Brady are self-executing, and they do not require a motion by the defense or an order of the court to take effect.  Kyles v. Whitley, 514 U.S. 419, 435 (1995) (citing United States v. Agurs, 427 U.S. 97, 108 (1976)).  Additionally, Brady material must be disclosed sufficiently in advance of trial as to be of value to the accused.  United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991).

Brady places an affirmative duty on the prosecutor not only to disclose materials that are handy, but also to seek out information in the government's possession that is favorable to the defendant. "The individual prosecutor has a duty to learn of any favorable evidence known to others acting on the government's behalf in the case." Kyles, 514 U.S. at 437.  The prosecutor's obligation to seek out exculpatory evidence in the government's possession is not tempered by considerations of reasonableness or undue burden.  "The duty arose from the unfairness of the government prosecuting a

1  person on a criminal charge while keeping as a secret to itself materials that might

2  exonerate him.  It is a duty that assumes that the government's aim in a criminal trial is

3  not victory but justice."  United States v. Wood, 57 F.3d 733, 737 (9th Cir. 1995).

4       The Supreme Court has long protected a defendant's right to fairness in the

5  criminal process.  It has grounded this protection primarily in the Due Process Clause as

6  well as other more specific provisions of the Bill of Rights.  Whatever the textual

7  source, however, the Court consistently has held that criminal defendants are entitled to

8  be treated fairly throughout the process.  United States v. Stein, 435 F. Supp. 2d 330,

9  357 (S.D.N.Y. 2006).  In everyday language, they are entitled to a "fair shake."  Id.

10       The constitutional requirement of fairness in criminal proceedings not only

11  prevents the prosecution from interfering actively with the defense, but also from

12  passively hampering the defendant's efforts.  As the Court put it in California v.

13  Trombetta,

14  > Under the Due Process Clause . . ., criminal prosecutions must
15  > comport with prevailing notions of fundamental fairness. We have
16  > long interpreted this standard of fairness to require that criminal
17  > defendants be afforded a meaningful opportunity to present a
18  > complete defense. To safeguard that right, the Court has developed
19  > what might loosely be called the area of constitutionally guaranteed
20  > access to evidence. Taken together, this group of constitutional
21  > privileges delivers exculpatory evidence into the hands of the accused,
22  > thereby protecting the innocent from erroneous conviction and
23  > ensuring the integrity of our criminal justice system.

20  467 U.S. 479, 485 (1984).

21       As stewards of the Constitution, prosecutors are required to conduct themselves

22  fairly in order to safeguard the Constitution's due process protections.  See Brady, 373

23  U.S. at 87; United States v. Lovasco, 431 U.S. 783, 795 n.17 (1977) (prosecution may

24  not delay intentionally indictments to prejudice defendants); United States v. Muirs, 145

25  Fed. Appx. 208, 209 (9th Cir. 2005) ("[G]overnment interference with defense access to

26  witnesses implicates due process.").

27

28

HOWREY LLP

1  ## II.     DISCOVERY REQUESTS

2  ### A.     Disclosure of the Rejected Alex Proctor Search Warrant Affidavit

3  On November 21, 2002, the FBI searched Pellicano's office.  On the same day,

4  the rejected affidavit of SA Stanley Ornellas ("SA Ornellas") for a search of Alex

5  Proctor's ("Proctor") residence showed up in a public file thereby allowing *Los Angeles*

6  *Times* reporters, Matt Lait and Scott Glover, to obtain a copy of an otherwise

7  confidential affidavit and publish its contents.  The defense believes that the disclosure

8  was not inadvertent, but was an intentional leak by the government to make

9  unsubstantiated public accusations against Steven Seagal.  In fact, the article (Ex. C)

10  specifically cites a "federal law enforcement source close to the case" as stating that

11  Proctor's statements regarding Steven Seagal are "uncorroborated" and that

12  "investigators were still assessing Proctor's credibility and possible motives."

13  The facts show an astonishing similarity to the recent leak of the Pellicano-

14  Christensen tapes (an attempt to damage an individual's reputation through press leaks)

15  and constitute gross governmental misconduct.  The following seems uncontroverted:

16      1.  A federal law enforcement source placed a confidential affidavit in a public

17          file and tipped the *Los Angeles Times* reporters to its presence so that they

18          could leak it to the public;

19      2.  A federal law enforcement source anonymously spoke with the *Los*

20          *Angeles Times* reporters about Proctor's unresolved credibility and possible

21          motives.

22      3.  In order to write the article for the November 22, 2002 edition of the

23          newspaper, the reporters had to have all of their information on the day of

24          the initial search of Pellicano's offices, November 21, 2002.  Such

25          immediate access to confidential information could have only been

26          provided by a federal law enforcement source.

27  The defense is entitled to discovery of all materials surrounding the leak of the

28  Proctor affidavit for a least two reasons:  (1) the leak clearly came from the government

1   and constitutes the first leak in what appears to be a pattern of leaking in gross violation

2   of the defendants' rights and (2) the leak demonstrates that, at the time of the November

3   22, 2002 article, three days after SA Ornellas completed his affidavit for the Pellicano

4   search, federal law enforcement officials had not yet resolved the credibility and motive

5   issues for Alex Proctor.  Their doubts about Proctor's credibility and motives were not

6   included in SA Ornellas' affidavit.  Such an omission would destroy any probable cause

7   finding and also establish the government's bad faith in the very search upon which the

8   government's case is based.

9          The defense requests the Court to order the government to produce:

10              1.   all reports, memoranda, documents and material of any kind relating to the

11                   release of the rejected Proctor search affidavit.

12              2.   all documents and materials that discuss or pertain to the identification of

13                   the federal source(s) who talked with Matt Lait and/or Scott Glover;

14              3.   all documents and materials that discuss or pertain to the identification of

15                   the federal officials who placed the rejected Proctor affidavit in a public

16                   file;

17              4.   all documents and materials that discuss or pertain to the identification of

18                   the federal officials who alerted Lait and Glover to the location of the

19                   rejected Proctor affidavit;

20              5.   all investigation reports and findings surrounding the release of the

21                   information to Lait and Glover;

22              6.   all reports, memoranda, documents and material that pertain to doubts

23                   about Proctor's credibility and motives.

24      **B.   All FBI 302s Concerning The CW's Involvement with Other**

25              **Investigations and His Relationship with the FBI.**

26          Mr. Christensen will seek a *Franks* hearing concerning the unreliability of the

27   affidavit supporting the first search of Pellicano's office, as well as an evidentiary

28   hearing on the bad faith of the government in initiating the search.  Part of the attack on

the search affidavit involves showing the unreliability of the CW who taped Alex

Proctor's purported admission of placing the dead fish on Anita Busch's auto.[1]

Additionally, Mr. Christensen will show the government's bad faith by disclosing all of

the negative information about the CW that the government intentionally withheld from

the Magistrate Judge reviewing the search warrant affidavit.[2]

      For many months, counsel for Mr. Christensen and counsel for Mr. Pellicano

have requested materials concerning any relationship between the CW and the

government that predates the Anita Busch incident.  The government stonewalled and

never acknowledged a pre-existing relationship.  Then on January 19, 2007, after Mr.

Christensen's counsel sent a letter to the prosecutors reminding them of their disclosure

obligations, the prosecutors sent a letter (See Ex. B) with the following cavalier

admission:

> As for your claim that the CW had a relationship with the FBI
> before the Anita Busch incident, we have never suggested
> otherwise.  The CW did in fact provide other information to
> other agents in other cases and investigations.

      The prosecutors then refused to provide the FBI 302s pertaining to the CW's

involvement in other matters, contending that the 302s contained no *Brady* or *Giglio*

material.  To the contrary, the government must produce the 302s for a variety of

reasons.  It is self-evident that the CW was not a "cooperating witness" as represented in

the affidavit, but was a "confidential informant," perhaps a paid informant, who was

actively working with the government on several investigations.  It also appears that

AUSA Saunders prosecuted the case against the CW that was still pending at the time

---

[1] The defense will also show that Alex Proctor's "admission" is totally unreliable in that there are major discrepancies between what Proctor claims he did and what the police report indicates actually happened.

[2] The CW's identity has actually been disclosed on a website and is known by all parties.  There is no true justification for continuing to conceal the person's identity.

1  the search affidavit was prepared.  None of this extremely relevant and critical
2  information was disclosed to the reviewing Magistrate Judge and the government has
3  refused to provide it to the defense in this case.

4      The CW's pre-existing relationship with the government is relevant for the
5  following reasons:

6          1.  <u>Agent's Bad Faith</u>

7      In the search affidavit, SA Ornellas presents the CW as a witness who first
8  contacted Anita Busch, who in turn put the CW in contact with SA Ornellas.  In fact, the
9  FBI was already working with the CW who was trying to mitigate his exposure in the
10  case that AUSA Saunders was prosecuting against him.  The withheld 302s will fully
11  inform the defense of the nature, duration, and extent of the CW's involvement with the
12  government.  This information is necessary to evaluate the significance and extent of
13  SA Ornellas' omissions in the search affidavit.  The defense needs to know all of the
14  CW's activities and investigations to determine if SA Ornellas was aware of the CW's
15  ongoing work and what exactly should have been disclosed to the Magistrate Judge.

16          2.  <u>CW's Lack of Credibility and Reliability</u>

17      The defense has not been provided any information concerning: (i) the CW's
18  exposure in the case that was pending while he was cooperating with the government;
19  (ii) the understandings or agreements in place while the CW was working for the
20  government; (iii) any payments or considerations he received in other cases; (iv) the
21  types of cases he was working on; (v) his success or lack thereof; (vi) any disciplinary
22  or control issues pertinent to the CW's reliability and credibility; and (vii) a myriad of
23  other critical issues involving the CW's credibility.

24      The defense has assembled enough information, however, to know that the CW is
25  a major con artist who specializes in defrauding others.  It also appears that the CW was
26  possibly running two scams while taping Proctor.  It is also apparent that the FBI gave
27  the CW considerable latitude and that he often did not record his conversations with
28  Proctor.  Given all of these issues, the defense is entitled to all 302s involving the CW

HOWREY LLP

DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY

DM_US:20216810_1

1  and his work for the government.  A full evaluation of the CW's activities is necessary

2  to determine how credible and reliable he actually was and whether the necessary

3  disclosures were made to the Magistrate Judge.

4        3.  <u>Catch 22 Regarding CW's Handling of His First Meeting with Proctor</u>

5        In the search affidavit, SA Ornellas states that the CW told him that the CW had

6  met Proctor at a car repair business about four or five days before SA Ornellas

7  interviewed the CW on June 21, 2002.  Proctor supposedly told the CW that "some

8  people back east" wanted him to set fire to a female reporter's car.  The key question is

9  what did the CW do with that information and when.  If the CW told SA Ornellas or the

10  FBI about his conversation with Proctor, then why is that fact omitted from the affidavit

11  and why does SA Ornellas fabricate a chronology that makes it appear that the CW's

12  first contact was with Anita Busch?  If the CW did not tell the FBI about Proctor at a

13  time when the CW was working for the FBI, then how reliable is his story?  The CW

14  should have immediately informed the FBI that there was a plan to burn a female

15  reporter's car.  In either case, the defense is entitled to the 302s concerning the CW's

16  work and relationship with the law enforcement officials, including the FBI and the

17  United States Attorney's Office, in order to evaluate the CW's version of his first

18  meeting with Proctor and SA Ornellas' truthfulness in the affidavit.

19        The defense requests the Court order the government to produce:

20        1.  all documents and materials that discuss or pertain to the CW's work and

21  relationship with law enforcement officials, including the FBI and the United States

22  Attorney's Office;

23        2.  all documents and materials that discuss or pertain to any recommendations or

24  benefits the CW received or retained because of his cooperation with the government;

25  and

26        3.  all documents and materials that discuss or pertain to:

27

28

HOWREY LLP

DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY

DM_US:20216810_1

a.  any and all threats, express or implied, direct or indirect, or other coercion directed against the CW, including without limitation, threats of criminal or regulatory action;

b.  any statements made by any law enforcement official or any potential government witness that the government or any government agent tended to doubt the CW's credibility or the veracity of statements he has made;

c.  prior criminal convictions or guilty verdicts or juvenile adjudications of the CW;

d.  prior or subsequent misconduct, criminal acts, or other bad acts of the CW, including but not limited to criminal records, allegations of criminal conduct, allegations of conduct in violation of any federal, state, regulatory, or self-regulatory organization regulation or rule;

e.  a description of any and all considerations or promises of consideration given by any law enforcement official to or on behalf of the CW.  Such "consideration" includes anything that arguably could provoke an interest, motive, or bias in the witness in favor of the government or against a an individual, including all funds paid to, or allowed to be retained by, the CW and any offers, promises, or suggestions that the government would make recommendations to, provide or not provide information to, or notify or not notify other law enforcement or regulatory agencies, including foreign law enforcement or regulatory agencies.  Such considerations or promises of consideration specifically include any offers, suggestions, or promises that the government would not bring certain charges or would not seek criminal or civil forfeiture of the alleged proceeds of any crimes alleged or committed;

f.  a description of any requests or complaints made to the government by the CW that could demonstrate any hope or expectation on the part of the CW for favorable governmental action on his behalf;

DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY

HOWREY LLP

DM_US:20216810_1

g.  negotiations between the government and the CW concerning actual or potential criminal charges, including but not limited to draft plea agreements.  This request includes, but is not limited, to any draft agreements or other correspondence suggesting that the CW would be or could be charged with additional charges or would not seek criminal or civil forfeiture of the alleged proceeds of any crimes committed, or which the government contended had or might have been committed, by the CW;

h.  advice given by an attorney for the government or a law enforcement agent to the CW concerning whether or not to agree to be interviewed by an attorney or investigator for a potential criminal defendant or the factors that the potential government witness should consider when making such a decision;

i.   the motivation of the CW to favor the government or be biased against another person;

j.   all statements (written or oral) made by the CW that the government knows, or through reasonable diligence should know, are false including but not limited to, statements made in proffers or other interviews with law enforcement, grand jury testimony or testimony in another proceeding, whether criminal or civil, in nature or in tax returns;

k.  all written or oral statement made by the CW which in any way contradicts or is inconsistent with other statements he has made;

l.   all medical and psychiatric reports or any other documents or information known to the government concerning the CW that arguably affects the CW's credibility or ability to perceive, relate or recall events.  This request includes, but is not limited to, information demonstrating that the CW is or was suffering from any physical or mental disability or emotional disturbance, or is or was using, dependent upon, or addicted to drugs or alcohol at any time; and

1    m. all rules or regulations of the FBI, the United States Attorney's Office,

2         and the Department of Justice that involve the handling and supervision of

3         CW's and informants that were in effect at the time the CW was

4         cooperating with the government.

5    **C.    <u>Original Affidavit Supporting Search Warrant</u>**

6         For many months, counsel for Mr. Christensen and counsel for Mr. Pellicano

7    have asked the government to produce the original affidavit that supported the initial

8    search of Pellicano's office.  (The version produced by the government has

9    "AMENDED" printed at the top.)  The government simply ignored all such requests.

10   Finally, in a telephone conversation on January 11, 2007, AUSA Saunders admitted that

11   he did not recall what had become of the original warrant.  In the aforementioned letter

12   of January 19, 2007, (Ex. B), he offered the following incredible explanation:

13            We have told you that we do not recall why the affidavit bears
             the handwritten word "AMENDED" at the top of the face
14           page, but that the likely explanation is that the initial filing
             was rejected for a clerical error such as a missing attachment.
15           In any event, we have told you that, consistent with our
             standard practice of not retaining drafts of duly filed
16           documents, no prior versions of the affidavit exist.

17

18        The defense is not aware of any policy in the United States Attorney's Office that

19   would allow an AUSA to destroy an original search warrant affidavit if the Clerk's

20   Office or the Magistrate Judge rejected it.  The missing original affidavit at issue could

21   contain significant variations from the amended affidavit that would further illuminate

22   what was being omitted or added, and show whether that information was reliable or

23   hurriedly assembled without any concern for accuracy.

24        Accordingly, the defense requests the Court order the government to:

25            1. conduct a complete search of the computers of AUSA Saunders, AUSA

26                Lally, and SA Ornellas to determine if any deleted drafts or versions of the

27                affidavit can be recovered;

28

HOWREY LLP

-15-

DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY

DM_US:20216810_1

2. conduct a complete search of the FBI's and the United States Attorney's Office's back-up tapes to determine if any deleted drafts or versions of the affidavits can be recovered;

3. conduct a search of the computers of AUSA Saunders, AUSA Lally and SA Ornellas and all back-up tapes to determine if and when drafts or earlier versions of the affidavit were actually deleted;

4. produce any recovered drafts or earlier versions of the affidavit;

5. provide a record of the time and nature of any deletions of earlier drafts or versions; and

6. obtain a copy of the Magistrate Judge's files pertaining to the Pellicano search affidavits.

### D.   The CW's Interaction with Barry Levin

While the CW was taping Alex Proctor, the CW attempted to extort money from Barry Levin ("Levin").  Levin represented Jules Nasso, who pleaded guilty to an extortion plot involving Steven Seagal.  Levin recorded the CW's attempt to get assistance from Levin on August 29, 2002.  Levin produced the tape to the government in March 2003, pursuant to a grand jury subpoena.  The CW's interactions with Levin were not disclosed in the Ornellas search affidavit.  If the government intentionally withheld information from the Magistrate Judge concerning the CW's contacts with Levin, then the omission could undermine a finding of probable cause, or at the very least, show bad faith on the part of the government.

Accordingly, the defense requests the Court order the government to produce:

1. a copy of the grand jury subpoena(s) issued to Mr. Levin;

2. all documents and materials pertaining to the CW's interaction with Mr. Levin, including the notes of agents and attorneys; and

3. all discovery concerning Mr. Levin and the CW produced to Donald Re in Case No. CR02-1278-DT.

HOWREY LLP

**E.**     <u>Audio Recordings Withheld Due to an "Ongoing Investigation"</u>

The government initially said that it withheld production of audio recordings because of "ongoing investigations."  On June 14, 2006, AUSA Lally agreed to provide the defense with a log of all recordings that were being withheld due to "ongoing investigations."  On September 27, 2006, Mr. Christensen again reminded the government of its promise.  To date, the government has not produced the log.  It is also apparent that there are no remaining investigations and that the superseding indictment is a myth.  There is also no legal basis for withholding the recordings because of so-called investigations.  There is a Protective Order in place that would cover such disclosures.  Then, incredibly, on February 5, 2007, the government reversed itself and claimed to the defense that it supposedly has not withheld recordings based on any ongoing investigations.

In an abundance of caution, Mr. Christensen asks the Court to order the government to produce all of the recordings withheld on the basis of a purported ongoing investigation and to provide the promised log describing such recordings.

**F.**     <u>Discovery Regarding The Audio Recordings</u>

The government's production of audio recordings is incomplete, confusing and quite possibly sanctionable.  Astonishingly, on February 5, 2007, the government notified the defense that through some sort of "quality control review" it had "recently identified" some previously unnoticed recordings (Ex. A).  As mentioned above, this belated discovery of recordings shows at a minimum how totally unprepared and disorganized the government is.  Additionally, previously provided logs are revealed to be inaccurate without meaningful assistance in determining what errors have been made.  Such an unprecedented level of governmental incompetence makes it impossible for the defense to prepare for trial.

The fact that, on January 12, 2007, about a year after the indictment, the government produced additional FBI 302s concerning the handling of its seized computers and audio recordings underscores how unprepared and disorganized the

-17-
DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY

1  government is.  The materials produced on January 12, 2007, should have been

2  produced when Mr. Christensen was arraigned.  The abysmal delay can only be for one

3  of two reasons:  either the government is so monumentally disorganized that it has not

4  and cannot marshal the discovery necessary to try this case in a fair manner, or the

5  government has intentionally delayed producing the material in an effort to confuse and

6  misdirect the defense.  Neither reason is tolerable.

7       First, the Court should make serious inquiry into how much the government has

8  yet to do to meet its discovery obligations, keeping in mind that the prosecutor's

9  minimalist view to date does not comport with the law.  If there is significant work yet

10  to be done, such as the continued decoding of recordings, then the Court should dismiss

11  the case without prejudice until such time as the government is ready to meet its

12  discovery obligations.

13       If the Court is not inclined to dismiss the case against Mr. Christensen until such

14  time as the government has completed its investigation and is sufficiently organized to

15  produce discovery, then the defense requests the Court to order the government

16  immediately to respond to the following requests, which were set forth in a letter on

17  September 8, 2006 (Ex. D).  The requests are not interrogatories as the government

18  contends, but are requests which must be answered in order for the Court and the

19  defendants to analyze if the government has met its discovery obligations.  If a

20  particular item does not exist, for example, then the defense is entitled to that

21  knowledge.

22       Accordingly, the defense requests the Court order the government to produce all

23  documents and materials showing:

24            1. whether there are any recordings of any kind that have not been listed on

25               the inventories the government has provided to the defense.  If so, please

26               identify the recordings and the reason(s) they have not been previously

27               disclosed to the defense;

28

-18-
DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY
DM_US:20216810_1

2.  whether the government is withholding any recordings of or by Pellicano on the basis that the recordings relate to other investigations or other cases. If so, please identify the recordings and the legal basis for not previously disclosing them to the defense;

3.  whether at any time during the searches of Pellicano's facilities, the copying of hard drives, or during the investigation of Pellicano's activities, the government lost, destroyed, or in any way altered any of the original recordings. If so, identify the recordings, what happened to each, when it occurred, and who was responsible; and

4.  whether the "dirty or filter team" still has possession of recordings that have not been produced to the government. If so, please identify the recordings and the reason(s) they have not been produced to the government.

**G.   Copying, Chain Of Custody, Authentication And Method Of Decrypting The Audio Recordings**

The Court's Criminal Motion and Trial Order require prompt compliance with Fed. R. Crim. P. 16, among others. Rule 16 requires the government to permit inspection and copying of documents, data, and reports of examinations and tests that are material to preparing the defense. Rule 16 (a)(1)(E) and (F).

The defense believes that it is the practice of the Los Angeles United States Attorney's Office to refrain from indicting a case until it is "trial ready" and the discovery is ready to be produced.

The January 12, 2007, partial production of FBI 302s pertaining to the copying, chain of custody, and decryption of the audio recordings demonstrates that the government has failed to comply with the Court's Order and Rule 16. There are still missing materials concerning the copying, chain of custody, and decryption of the recordings.

Accordingly, the defense requests the Court order the government to produce:

HOWREY LLP

DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY

DM_US:20216810_1

1.  all original sources from which the audio recordings were copied.  If the government no longer has the original sources, it should identify when and how the original sources were disposed of and their current location;

2.  all documents or materials describing how the government decoded the audio recordings, including the name and characteristics of any software used to decode the recordings;

3.  the names of all governmental agencies that in any way copied, handled, reviewed, analyzed or decrypted the recordings;

4.  the names and contact information of all persons who copied, handled, reviewed, analyzed or decrypted the recordings;

5.  all documents or materials pertaining to failed attempts to decode the recordings or memorializing the compromise, damage or distortion of any recording; and

6.  all documents or materials pertaining to the results or interim reports on efforts to decrypt the recordings.

The defense would also request a response from the government as to whether it will agree to a joint meeting with government and defense computer experts.

**H.   "Filter Team" Issues**

On numerous occasions the defense has asked the government details concerning the operation of the so-called "dirty" or "filter team" and its decisions regarding the production of recordings to the prosecution, and ultimately to the defense.  The government still has not responded to most requests.

The defense requests the Court order the government to produce all documents and materials that show:

1.  whether the "filter team" is continuing to operate or has disbanded; and if it is still in operation, what it is doing;

HOWREY LLP

DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY
DM_US:20216810_1

2.   whether there is more discovery to be released by the "filter team"?  If so, identify the nature of the discovery and when it will be produced to the government and to the defense;

3.   why the March 18, 2002 tape was produced at such a late stage in the discovery process and any efforts to locate the earlier March recording(s) that have not been produced;

4.   how many recordings the "filter team" still has in its possession and has not produced to the prosecutors.  Please provide a general inventory with identifying information of all recordings that are still in the possession of the "filter team" that have not been produced to the prosecutors;

5.   whether there are any materials or recordings of any kind that the "filter team" is currently reviewing, analyzing, or processing.  If so, please provide a general inventory with identifying information of all materials or recordings that are currently being reviewed, analyzed, or processed;

6.   why targets or defendants were excluded from participating in the evaluation of the recordings and how they should be reviewed and produced;

7.   guidelines, instructions, protocols, directives, and policies concerning the operation of the "filter team;" and

8.   all communications between the "filter team" and the agents and prosecutors working on the Pellicano investigation and its related components.

The defense already has requested the government to produce the Prosecution Memorandum given to the "filter team," with no response.  Mr. Christensen is entitled to see what information the prosecution presented to the "filter team" concerning any theories or allegations against him, Kirk Kerkorian, Lisa Bonder Kerkorian, Steven Bing, or Dennis Wasser.

1   **I.      Kerkorian Interview**

2        On September 1, 2006, the FBI and AUSA Lally interviewed Kirk Kerkorian in

3   what the defense believes was a misguided attempt by the government to get Mr.

4   Kerkorian to waive his attorney-client privilege regarding his litigation with Lisa

5   Bonder Kerkorian.  In addition to the attempt to elicit a privilege waiver, the

6   government questioned Mr. Kerkorian on other matters related to the criminal case.  The

7   defense believes that Mr. Kerkorian provided information discoverable to the defense,

8   yet there has been no FBI 302 interview report produced.

9        The defense requests the Court order the government to produce:

10          1.   all correspondence, e-mails, documents and materials pertaining to the

11               objectives and reason for the Kerkorian interview;

12          2.   all correspondence, e-mails, memoranda, notes, documents and materials

13               pertaining to the scheduling of the Kerkorian interview; and

14          3.   all notes, reports, and memoranda of any interviews of Mr. Kerkorian.

15   **J.      Redactions of Kolodny 302**

16        The government has produced an FBI 302 of Steve Kolodny dated August 12,

17   2005.  The written interview report has significant redactions which appear to be

18   substantive.  The defense requests this Court to review the redactions and if

19   discoverable, order the government to remove the redactions.  If the material is part of a

20   so-called ongoing investigation and is relevant to Mr. Christensen's defense, then it

21   should be produced.  The government's excuse of withholding evidence based on an

22   ongoing investigation is wearing thin.

23   **K.      DOJ /USAO Memoranda Re Hobbs Act**

24        The defense is entitled to all memoranda and material from United States

25   Department of Justice and the Los Angeles United States Attorney's Office concerning

26   the evaluation of the Hobbs Act for the purposes of charging Alex Proctor with the

27

28

HOWREY LLP

DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY

DM_US:20216810_1

1   Anita Busch incident and supporting the initial search affidavit for Pellicano's Office.[3]

2   The affidavit was based on a purported violation of the Hobbs Act when the developing

3   cases suggested that the Busch incident lacked the requisite "obtaining" of property

4   interest that was established in <u>Scheidler v. NOW, Inc.</u>, 537 U.S. 393 (2003), which was

5   pending when the Pellicano search occurred.  Because of the <u>Scheidler</u> decision, the

6   United State Attorney dropped the Hobbs Act charge against Proctor.

7       Pellicano challenged the probable cause for the search warrant in his prior case

8   and both the United States District Court and the Ninth Circuit Court of Appeals upheld

9   the search exclusively on the good faith exception of <u>United States v. Leon</u>, 468 U.S.

10  897 (1984).

11      As part of the <u>Leon</u> analysis, Judge Dickran Tevrizian noted:

12          On November 19, 2002, AUSA Saunders approved an
13          affidavit prepared by FBI Special Agent (SA) Stanley E.
            Ornellas in support of a warrant to search the Offices of
14          Pellicano Investigative Agency, Ltd., for evidence of
            violations of 18 U.S.C. §§ 371 (Conspiracy) and 1951 (Hobbs
15          Act).  AUSAs Michael Zweiback (TOCSEC Deputy Chief)
16          [Bruce] Riordan, and [Jacqueline] Chooljian also reviewed
            and approved the affidavit.  In addition, the warrant
17          application and the procedures to protect any privileged
            documents were approved directly by AUSA Chooljian,
18          United States Attorney Debra Yang, and an attorney at the
19          Department of Justice's Office of Enforcement Operations in
            Washington, D.C.
20

21  Findings of Fact and Conclusions of Law, p. 3 (May 30, 2003).

22      Judge Reinhardt in his Ninth Circuit dissent excoriated the government as

23  follows:

24          Additionally, any argument that the F.B.I. agents acted in
25          good faith is foreclosed by *Center Art Galleries-Hawaii v.*
            *United States*, 875 F.2d 747 (9th Cir. 1989).  There, we held
26

27  ───────────────────

    [3] The government may claim that such material is work product, but the government has put its
28  deliberations into issue by citing its deliberations as evidence of its good faith.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

that an Officer seeking a warrant who is aware of a potential legal problem must alert the magistrate-judge to the issue "and [ ] seek specific assurances that the possible defects will not invalidate the warrant," if he is to rely subsequently on the good faith exception. *Id.* at 753-54.  Here, there can be little doubt that the agent who obtained the warrant was "keenly aware" of the legal problem created by the established law of this circuit and failed to alert the magistrate-judge to it.  The agent "presented his affidavit to the [U.S. Attorney's Office] for multiple levels of review."  More specifically, the affidavit was presented to an Assistant U.S. Attorney, a Section Deputy Chief, a Section Chief, and the Chief of the Criminal Division.  It was also presented to Senior Litigation Counsel and a Deputy Chief with the Organized Crime and Racketeering Section of the Department of Justice.  The affidavit supporting the warrant was approved at each level.  It is inconceivable that the "obtaining" issue did not arise during the course of these reviews, especially given that the Justice Department was litigating that very issue before the Supreme Court in November, 2002, at the time when the F.B.I. presented the Department with the warrant application for review.  *See Scheidler,* (citations omitted).

16

17   United States v. Pellicano, 135 Fed. Appx. 44, 50-51 (9th Cir. 2005).

18        To date, there has been no inquiry as to whether AUSA Saunders, and in turn SA

19   Ornellas, knew of the legal issues surrounding the Hobbs Act and to what extent the

20   issues were discussed.  If the government was aware of the pending Scheidler case and

21   failed to advise the Magistrate Judge, then the government's omission constitutes bad

22   faith under the Center Art Galleries-Hawaii decision.

23        Was there an internal governmental debate as to whether the Hobbs Act applied

24   to the Anita Busch incident?  Did AUSA Saunders actually consult with his superiors

25   concerning the Hobbs Act issues as claimed?  The defense is entitled to explore all of

26   these issues concerning the government's knowledge of the state of the law concerning

27   the Hobbs Act in the context of Ornellas' affidavit.  The only way to determine what

28

HOWREY LLP

DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY
DM_US:20216810_1

truly happened is to gain access to the government's internal memoranda discussing the legal issues surrounding the Hobbs Act.

The defense requests the Court order the government to produce:

1. all documents and materials showing the deliberative process, respective roles, and legal positions concerning the Hobbs Act allegations in the Ornellas affidavit, and the contact information for each person who participated in evaluating or discussing the legal issues concerning the Hobbs Act for purposes of searching Pellicano's office;

2. All government memoranda, notes, emails, or documents pertaining to the Hobbs Act and the Anita Busch incident and/or the Ornellas affidavit for the search of Pellicano's Office; and

3. All United States Department of Justice and United States Attorney's Office (CDC) memoranda, bulletins, advisories, or memoranda discussing the Hobbs Act, the decision in <u>United States v. Panaro</u>, 266 F.3d 939 (9th Cir. 2001), and/or the pending <u>Scheidler</u> case for the period January 2001 (the year of the <u>Panaro</u> decision) through July 25, 2003 (the third search of Pellicano's Office).

**L.   <u>Review of Supposedly Non-Pertinent and Privileged Recordings</u>**

For many months the defendants have unsuccessfully tried to work out a mechanism for an independent, objective third party to review the audio recordings which the government has withheld on the basis that they are either "non-pertinent" or "privileged."[4]   A special master is cost-prohibitive for the defendants; the Court has indicated that government funds are not available; the prosecutors have refused to even share expenses; and the Local Rules apparently preclude the Court from assigning a

---

[4] The government's suggestion in its February 5, 2007 letter (Ex A; fn 1; p. 3) that the defendants have taken no action to obtain the "non-pertinent" recordings is misleading and inaccurate.  For months the defense has been trying to reach a resolution of this issue.

DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY

1  Magistrate Judge to review the recordings.  Based on past performance, the defendants

2  have no confidence in the prosecution's unilateral review of the recordings.  The

3  government is not fully informed of the defenses and issues the defendants intend to

4  pursue and cannot possibly determine what is relevant to the defense and what is not.

5      The easiest solution for the non-pertinent recordings is to simply allow the

6  defendants to listen to them.  The access can be given in a controlled environment if the

7  government so desires.  There is no justification for the government not to allow the

8  defendants to listen to the non-pertinent recordings to see if they are of any relevance.

9  If they are not relevant, then the inquiry is complete.  If there are relevant recordings,

10 then the government can provide copies.  It is simply impossible for the defendants to

11 know whether a recording is relevant without listening to it.

12     As to the supposedly privileged recordings, the Court should review the

13 recordings to determine if there is discoverable material.  If the defendants are entitled

14 to the recordings, either through Rule 16 or <u>Brady</u>, then the Court will have to make a

15 decision concerning whether the government can proceed with the case if the privilege

16 cannot be removed.  As there is not a category labeled "Privileged <u>and</u> Non-Pertinent",

17 the defense assumes that all the privileged recordings are relevant and discoverable.

18     The defense requests the Court order the government to give access to all

19 defendants so that they can listen to the non-pertinent recordings.  The defense also

20 requests the Court to conduct an *in camera* review of the privileged tapes to ensure that

21 the government is not withholding discoverable materials.

22     **M.    <u>Documents Concerning QLA215</u>**

23     The defense also requests the Court order the government to produce all

24 documents and materials that show that the recorded conversation identified as QLA215

25 (2231223.WAV) was a consensually monitored call and not a wiretap.  The defense

26 believes that this call was not the result of a wiretap.  Consequently, the government

27 would not have a single recording of a purported wiretap.

28

**III.   CONCLUSION**

For all the foregoing reasons, Mr. Christensen respectfully requests the Court order the government to produce additional discovery as outlined above.

DATED:  February 12, 2007

Respectfully submitted,

HOWREY LLP
TERREE A. BOWERS


By:   /s/ Terree A. Bowers_____
TERREE A. BOWERS
Attorneys for Defendant
TERRY CHRISTENSEN

1

**TABLE OF CONTENTS**

2

**Page(s)**

3    MEMORANDUM OF POINTS AND AUTHORITIES ................................................. 1

4    I.    INTRODUCTION ................................................................................................ 1

5         A.    Government's Failure to Produce Required Discovery ............................... 1

6         B.    Legal Standards For The Government's Disclosure
                Obligations .............................................................................................. 5

7    II.   DISCOVERY REQUESTS ................................................................................ 8

8
9         A.    Disclosure of the Rejected Alex Proctor Search Warrant
                Affidavit .................................................................................................. 8

10        B.    All FBI 302s Concerning The CW's Involvement with
                Other Investigations and His Relationship with the FBI. .......................... 9
11
12        C.    Original Affidavit Supporting Search Warrant ........................................ 15

          D.    The CW's Interaction with Barry Levin .................................................. 16
13
          E.    Audio Recordings Withheld Due to an "Ongoing
14              Investigation" ........................................................................................ 17

15        F.    Discovery Regarding The Audio Recordings ........................................... 17

16        G.    Copying, Chain Of Custody, Authentication And
                Method Of Decrypting The Audio Recordings ......................................... 19
17
          H.    "Filter Team" Issues ............................................................................... 20
18
19        I.    Kerkorian Interview ............................................................................... 22

          J.    Redactions of Kolodny 302 .................................................................... 22
20
21        K.    DOJ /USAO Memoranda Re Hobbs Act .................................................. 22

22        L.    Review of Supposedly Non-Pertinent and Privileged
                Recordings .............................................................................................. 25
23        M.    Documents Concerning QLA215 ............................................................ 26

24   III.  CONCLUSION ................................................................................................ 27

25

26

27

28

-i-
DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY

1

# TABLE OF AUTHORITIES

2

Page(s)

3

## CASES

4

*Brady v. Maryland*
373 U.S. 83 (1963) ................................................................ 1, 5

5

*California v. Trombetta*
6       467 U.S. 479 (1984) ................................................................ 7

7       *Kyles v. Whitley*
514 U.S. 419 (1995) ................................................................ 6

8
*Scheidler v. NOW, Inc.*
9       537 U.S. 393 (2003) ................................................................ 23

10      *Strickler v. Greene*
527 U.S. 263 (1999) ................................................................ 6

11
*United States v. Aichele*
12      941 F.2d 761 (9th Cir. 1991) ................................................ 6

13      *United States v. Burgess*
791 F.2d 676 (9th Cir. 1986) ................................................ 6

14
*United States v. Gee*
15      695 F.2d 1165 (9th Cir. 1983) .............................................. 6

16      *United States v. Hicks*
103 F.3d 837 (9th Cir. 1996) ................................................ 5

17
*United States v. Leon*
18      468 U.S. 897 (1984) ................................................................ 23

19      *United States v. Lovasco*
431 U.S. 783 (1977) ................................................................ 7

20
*United States v. Mandel*
21      914 F.2d 1215 (9th Cir. 1990) .............................................. 6

22      *United States v. Muirs*
145 Fed. Appx. 208 (9th Cir. 2005) .................................... 7

23
*United States v. Pellicano*
24      135 Fed. Appx. 44 (9th Cir. 2005) ...................................... 24

25      *United States v. Stein*
435 F. Supp. 2d 330 (S.D.N.Y. 2006) ................................ 7

26
*United States v. Wood*
27      57 F.3d 733 (9th Cir. 1995) .................................................. 7

28

HOWREY LLP

1

**TABLE OF AUTHORITIES (cont.)**

2

**Page(s)**

3

<u>**RULES**</u>

4

Fed. R. Crim. P. 16(d)(2) ..................................................................................... 6

5

Fed. R. Crim. Proc. 16(a)(1) ............................................................................... 5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**HOWREY LLP**

DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY

1

**PROOF OF SERVICE**

2

3    STATE OF CALIFORNIA              )
                                      )    ss.:
4    COUNTY OF LOS ANGELES            )

5

6          I am employed in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 550 South Hope Street, Suite 1100, Los Angeles, California 90071.

7

           On February 12, 2007, I served on the interested parties in said action the within:

8

9    **DEFENDANT TERRY CHRISTENSEN'S NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY**

10         by placing a true copy thereof in a sealed envelope(s) addressed as stated on the attached mailing list and causing such envelope(s) to be deposited in the U.S. Mail at Los Angeles, California.

11

12   ☒    (MAIL) I am readily familiar with this firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. postal service on that same day in the ordinary course of business.  I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

13

14

15   ☐    (EXPRESS MAIL) I am readily familiar with this firm's practice for collection and processing of Express Mail to be sent by the United States Postal Service.  Under that practice, the Express Mail would be deposited on that same day in the ordinary course of business in a post office, mailbox, sub-post office, substation, mail chute, or other like facility regularly maintained by the United States Postal Service or receipt of Express Mail.

16

17

18   ☐    (PERSONAL SERVICE) I caused each such envelope to be delivered by hand to the offices of each interested party.

19

20   ☒    (FACSIMILE) I caused the foregoing document to be served by facsimile transmission to AUSA Daniel Saunders and AUSA Kevin Lally at the facsimile machine telephone number shown as stated on the attached mailing list.

21

22         I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

23         Executed on February 12, 2007, at Los Angeles, California.

24

25         _____          _____
                  Yvonne A. Kubicek                          /s/ Yvonne A. Kubicek
26              (Type or print name)                          (Signature)

27

28

HOWREY LLP

-1-
DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY

1

<u>SERVICE LIST</u>

2

Daniel Saunders
Kevin M. Lally

Counsel for Plaintiff
UNITED STATES OF AMERICA

3

Assistant United States Attorneys
United States Attorney's Office

4

1500 United States Courthouse
312 North Spring Street

5

Los Angeles, CA 90012
Fax: (213) 894-3713

6

7

Steven F. Gruel, Esq.
Law Office of Steven F. Gruel
655 Montgomery Street, Suite 1700

Counsel for Defendant ANTHONY PELLICANO

8

San Francisco, CA 94111
Fax: (415) 576-1442

9

Michael Artan

Counsel for Defendant ANTHONY PELLICANO

10

Law Offices of Michael H. Artan
624 South Grand Avenue, Suite 2200

11

Los Angeles, California 90017

12

Stephen D. Miller, Esq.
Law Offices of Stephen D. Miller P.C.

Counsel for Defendant MARK ARNESON

13

360 North Bedford Drive, Suite 204
Beverly Hills, CA 90210-5157

14

Fax: (310) 247-8588

15

Chad Hummel, Esq.
Manatt, Phelps & Phillips

Counsel for Defendant MARK ARNESON

16

11355 West Olympic Boulevard
Los Angeles, CA 90064

17

Fax: (310) 914-5736

18

Mona C. Soo Hoo, Esq.
Law Offices of Mona C. Soo Hoo

Counsel for Defendant
RAYFORD EARL TURNER

19

One Wilshire Building
624 South Grand Avenue, 22nd Floor

20

Los Angeles, CA 90017-3323
Fax: (213) 623-3836

21

22

David Elder, Esq.
Law Offices of David Elder
428 Main Street, Suite 201

Counsel for Defendant KEVIN KACHIKIAN

23

Huntington Beach, CA 92648
Fax: (714) 960-9887

24

25

Lawrence J. Semenza, Esq.
1681 East Flamingo Road, Suite 3
Las Vegas, NV 89119

Counsel for Defendant ABNER NICHERIE

26

Fax: (702) 263-3539

27

28

HOWREY LLP

-2-
DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY

1  Kiana Sloan-Hillier, Esq.                          Counsel for Defendant DANEL E. NICHERIE
   Law Office of Kiana Sloan-Hillier
2  1901 Avenue of the Stars, Suite 615
   Los Angeles, CA  90067-6001
3  Fax:  (310) 391-1377

4  DANIEL E. NICHERIE
   Register No. 60587-079
5  Metropolitan Detention Center – Los Angeles
   Post Office Box 1500
6  535 North Alameda Street
   Los Angeles, CA  90012
7  Fax:  (213) 253-9510

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HOWREY LLP

DEFENDANT TERRY CHRISTENSEN'S  NOTICE OF MOTION AND MOTION TO COMPEL DISCOVERY